# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | |
|---|---|
| CLIFTON LANE CLOWER,  ) | |
|     Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 1:12-03483 |
| ) | |
| CAROLYN. W. COLVIN,  ) | |
| Acting Commissioner of Social Security, ) | |
|     Defendant. ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered July 19, 2012 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 15.)

The Plaintiff, Clifton Lane Clower (hereinafter referred to as "Claimant"), filed an application for DIB on January 7, 2009 (protective filing date), alleging disability as of January 1, 2008, due to "scoliosis, depression, [and] anxiety."[1] (Tr. at 10, 130-31, 150, 154.) The claim was denied initially and upon reconsideration. (Tr. at 72, 73, 74-76, 82-84.) On August 27, 2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 85-86.) A hearing was held on September 21, 2010, before the Honorable Geraldine H. Page. (Tr. at 34-71.) By decision dated October 5, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-24.) The ALJ's decision became the final decision of the Commissioner on May 23, 2012, when the Appeals Council denied

---

[1] Claimant was last insured for disability benefits on March 31, 2008. (Tr. at 12, 150.)

Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on July 19, 2012, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2010). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the

capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

>findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph © of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 1, 2008, through his date last insured, March 31, 2008. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease of the cervical spine with mild scoliosis and mild spinal stenosis; minimal kyphoscoliosis and mild degenerative disc disease of the thoracic spine; and an adjustment disorder with mixed anxiety and depressed moods," which were severe impairments. (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work, as follows:

>[T]he [C]laimant was able to: lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours out of an 8 hour workday; stand and/or walk for 6 hours out of an 8 hour workday; frequently reach overhead; and occasionally climb ramps/stairs, balance, kneel, crawl, stoop, and crouch. However, the [C]laimant could not have worked around hazardous machinery, worked at unprotected heights, climbed ladders/ropes/scaffolds, or worked on vibrating surfaces and due to his mental impairments the [C]laimant was limited to simple, routine, repetitive, and unskilled tasks that involved only occasional interactions with the general public.

(Tr. at 14, Finding No. 5.) At step four, the ALJ found that Claimant was unable to return to his past relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an assembler, a packer, and an inspector, tester, and sorter, all light and unskilled jobs. (Tr. at 22-23, Finding No. 10.) On this basis, benefits were denied. (Tr. at 23, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 28, 1961, and was 48 years old at the time of the administrative hearing on September 21, 2010. (Tr. at 22, 42, 130.) The ALJ found that Claimant had an eleventh grade, or limited education and was able to communicate in English. (Tr. at 22, 43, 153, 160.) In the past, he worked as a construction laborer, floor waxer, and a lubrication technician. (Tr. at 22, 45-46, 64-65, 154-56, 162, 179-86.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will

summarize it and discuss it below in relation to Claimant's arguments.[3]

**Evidence Prior to Claimant's Date Last Insured ("DLI"), March 31, 2008**:

*Dr. Philip B. Robertson, M.D., Psychiatrist*:

Claimant presented to Dr. Robertson on January 23, 2006, for an initial psychiatric evaluation. (Tr. at 279-80.) Claimant reported depression for the past year since learning of his wife's affair a year earlier. (Tr. at 279.) He reported frequent nervousness, occasional crying, irritability, poor sleep with initial insomnia and averaging four hours of sleep per night, good appetite, fair energy, and mild social withdrawal. (Id.) Claimant denied suicidal or homicidal ideation, his concentration was normal, he denied any prior psychiatric treatment or psychotropic medication, and indicated that he and his wife were trying to repair their relationship. (Id.)

On mental status exam, Dr. Robertson noted that Claimant was alert, had mildly decreased psychomotor activity, was cooperative but not engaging, exhibited fluent speech with limited spontaneity, and had a mildly depressed mood with a stable affect of subdued intensity and constricted range with limited reactivity. (Tr. at 280.) Claimant's sensorium was clear and intact with fair concentration, he was of average intellectual functioning, reality testing was intact, judgment and insight were fair, no psychotic symptoms were elicited, and his stream of thought was coherent, logical, and goal-directed. (Id.) Dr. Robertson diagnosed adjustment disorder with mixed anxiety and depressed mood and prescribed Lexapro 10mg and a trial of Ambien CR 12.5mg for sleep. (Id.)

**Evidence After Claimant's Insured Status Expired (After March 31, 2008)**:

*Dr. Robertson*:

Claimant returned to Dr. Robertson on April 17, 2008, and reported that he was depressed "all the time," and was having panic attacks. (Tr. at 278.) He reported past suicidal thoughts, but no current

---

[3] Claimant challenges only the ALJ's assessment of the limitations resulting from his mental impairments. The undersigned therefore, limits the summary and analysis of the evidence to Claimant's mental impairments.

suicidal intent or ideations. (Id.) Claimant stated that he was not taking any medications. (Id.) Dr. Robertson noted on mental status exam that Claimant was increasingly depressed, agitated, and anxious. (Id.) His speech was normal, his thought process was intact, he was oriented fully, and his memory, judgment, and insight were intact. (Id.) Dr. Robertson prescribed medications, which Claimant reported on his follow-up appointment on May 14, 2008, were helping. (Tr. at 277-78.) On May 14, Claimant indicated that he was having sleep difficulties, for which he was given Ambien 10mg. (Tr. at 277.) Dr. Robertson noted on May 14, 2008, that Claimant was less depressed, anxious, and agitated, and that he was getting along better with his wife. (Id.) He noted that Claimant was responsive to his medications. (Id.) On July 10, 2008, Claimant reported that he was doing "all right," that the medications continued to help, and that the Ambien worked well for his sleep difficulties. (Tr. at 276.)

On September 4, 2008, Claimant reported a lot of anxiety due to children in his trailer park bothering him. (Tr. at 275.) On November 25, 2008, Claimant reported that it had "been hectic," and indicated that his sister-in-law had been in a motor vehicle accident. (Tr. at 274.) Claimant also reported however, that he was sleeping well and that his appetite was "ok." (Id.) Dr. Robertson noted that Claimant's mental condition was stable with increased situational anxiety, and he increased his Klonopin from .5mg to 1mg. (Id.) On February 25, 2009, Claimant further reported some increased anxiety due to a terminally ill brother. (Tr. at 273.)

Claimant continued to experience some situational anxiety on June 9, 2009, and Dr. Robertson adjusted his medications. (Tr. at 319.) He also recommended counseling. (Id.) On August 6, 2009, Dr. Robertson noted that Claimant was doing better with, and was responsive to the medications. (Tr. at 320.) Claimant reported that he was doing "good." (Id.) Dr. Robertson noted on October 7, 2009, that Claimant was stable on medications and Claimant reported that he was "doing good." (Tr. at 321.) Claimant continued to do well through July 14, 2010, with no new complaints or issues and with

decreased depression and anxiety. (Tr. at 322-25.)

### *James Binder, M.D. - Psychiatric Review Technique*:

On April 18, 2009, Dr. Binder completed a form Psychiatric Review Technique on which he opined that Claimant's adjustment disorder with mixed anxiety and depressed mood was not a severe impairment. (Tr. at 290-303.) Dr. Binder opined that Claimant's mental impairment resulted in no more than mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace, and resulted in no episodes of decompensation each of extended duration. (Tr. at 300.) In rendering his opinion, Dr. Binder reviewed Claimant's self-completed forms of record and Dr. Robertson's January 23, 2006, initial psychiatric evaluation. (Tr. at 302.)

### *Debra Lilly, Ph.D. - Psychiatric Review Technique*:

On July 4, 2009, Dr. Lilly also completed a form Psychiatric Review Technique on which she opined that the evidence of record was insufficient to establish a mental impairment between Claimant's alleged onset date and his date last insured. (Tr. at 304-17.) Dr. Lilly opined therefore, that "the severity of a mental impairment, if one existed between these dates, cannot be addressed." (Tr. at 316.) She considered the same evidence as did Dr. Binder, and noted that the only psychological note that existed was from Dr. Robertson of January 2006, and the next note was dated in April 2008. (Id.)

### *Dr. Robertson - Mental Residual Functional Capacity Assessment*:

On September 20, 2010, Dr. Robertson completed a form Mental RFC Assessment on which he opined that Claimant was markedly limited in his ability to work in coordination or proximity to others without being distracted by them, respond appropriately to changes in the work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 515-17.) He further opined that Claimant was moderately limited in his ability to

9

sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Id.) Dr. Robertson indicated that Claimant was not significantly limited in all remaining functional areas. (Id.)

### *Princeton Community Hospital*:

Claimant presented to the emergency room on April 30, 2008, with complaints of back pain with a duration of two weeks. (Tr. at 236.) He reported a history of depression, but the medical notes reflect no diagnosis or treatment for any mental impairment. (Id.) On May 21, 2008, Claimant presented to the emergency room with thoughts of suicide with intent and plan, and complaints of depression, all related to his wife. (Tr. at 227-29.) Examination however, revealed normal mood, affect, speech, thought content, thought process, and cognition. (Tr. at 227.) His neurological examination likewise was within normal limits. (Id.) Claimant therefore, was diagnosed with acute anxiety reaction and depression and was discharged. (Id.)

On May 28, 2009, Claimant presented to the emergency room with a self-inflicted laceration of the left wrist after an altercation with his wife. (Tr. at 388-89.) Claimant stated that his wife had been abusing her medications with the intent to overdose and kill herself. (Tr. at 388.) In frustration, Claimant stated that he told her if she wanted to kill herself "this was the way that you need to do it." (Id.) He then took a knife in anger and cut his own arm in front of his wife. (Id.) Claimant stated that he did not mean to hurt himself and wanted to be discharged. (Id.) On mental status exam, Claimant had a depressed mood and broad affect; logical, coherent, and goal directed thought processes; no loss of sensation or flight of ideas; limited and superficial judgment and insight; and he denied any current suicidal ideations. (Tr. at 389.) He was diagnosed with depressive disorder NOS, generalized anxiety disorder NOS, personality disorder NOS, and assessed a GAF of 40. (Id.) He was admitted to the

behavioral medicine unit for stabilization and medication management, where he was discharged on May 30, 2009, in stable condition. (Tr. at 328-29, 385-87, 389.)

### *Clifford H. Carlson, M.D.*:

Claimant was referred to Dr. Carlson from the Princeton Community Hospital emergency room regarding his back pain. (Tr. at 249-52.) Claimant stated at his initial visit on May 13, 2008, that he stopped working two months prior due to his separation from his wife two months earlier. (Tr. at 249.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to accept the VE's testimony in response to the last two hypothetical questions regarding the mental limitations as testified to by Claimant. (Document No. 11 at 2-4.) More specifically, Claimant asserts that the ALJ found that he suffered from the severe impairment of an adjustment disorder with mixed anxiety and depressed moods. (Id. at 3.) The ALJ's finding of a severe impairment by definition means that the mental impairment resulted in more than minimal work related limitations. (Id.) Claimant asserts that the ALJ posed hypothetical questions to the ALJ that incorporated such limitations related to his mental impairment and the ALJ declined to adopt the VE's response that indicated the potential occupational base would be abolished with the limitations. (Id.) Consequently, Claimant asserts that the ALJ "never posed a question to the [VE] which included the [C]laimant's psychiatric/mental impairments which elicited an answer indicating that the [C]laimant could return to substantial gainful employment." (Id. at 4.) Claimant asserts that the Commissioner failed to meet her burden at step five of the sequential analysis. (Id.)

In response, the Commissioner asserts that the ALJ was not required to accept the VE's testimony in response to the last hypothetical question because the functional limitations were not supported by the record. (Document No. 15 at 9-10.) The Commissioner asserts that the ALJ's RFC was incorporated into the first two hypothetical questions, which accounted for the fact that Claimant

received no treatment for his mental impairments during the relevant time period. (Id. at 10.) The Commissioner asserts that the state agency consultants found that there was insufficient evidence of any mental impairment and another that there was no severe mental impairment. (Id.) Nevertheless, the ALJ limited Claimant to performing simple, routine, repetitive, unskilled work with only occasional interaction with the public, which more than accommodated any mental impairment Claimant may have had during the relevant time period. (Id.) Accordingly, the Commissioner asserts that the Commissioner's decision is supported by substantial evidence and Claimant's argument is without merit. (Id. at 10-11.)

Analysis.

Hypothetical Question.

      Claimant alleges that the ALJ erred in failing to rely on the VE's response to the last two hypothetical questions regarding his mental impairments. (Document No. 11 at 2-4.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

      The ALJ posed four hypothetical questions to the VE. (Tr. at 65-67.) The first hypothetical question set forth physical limitations and then limited an individual such as Claimant to simple,

routine, repetitive, unskilled work with only occasional interaction with the general public. (Tr. at 65.) The VE responded that such a person would be precluded from performing Claimant's past relevant work. (Tr. at 66.) The second hypothetical question assumed a younger individual, with a limited education, and the limitations set forth in the first hypothetical question. (Id.) The VE testified that several light, unskilled jobs were available for such a person, including assemblers, packers, inspectors, sorters, and testers. (Id.) The ALJ posed a third hypothetical question to the VE which asked the VE to assume the limitations set forth in the first hypothetical question, in addition to assuming that Claimant's testimony was credible. (Tr. at 66-67.) Thus, the ALJ asked the VE to consider a person who needs to nap during the day for three to four hours and would be off task 30 to 40% of the time of any given workday. (Tr. at 67.) The VE responded that such a person could not perform Claimant's past relevant work. (Id.) Finally, in the fourth hypothetical question, the ALJ asked the VE to consider an individual of Claimant's age, education, and work experience, together with the third hypothetical question. (Id.) The VE responded that the potential occupational base would be abolished. (Id.)

The ALJ adopted the VE's response to the first two hypothetical questions and found that Claimant was not disabled as there were other jobs that he could perform. (Tr. at 23-24.) In reaching this conclusion, the ALJ found that the only evidence of Claimant's mental impairment prior to his date last insured, March 31, 2008, was in the form of a treatment note from Dr. Robertson in January 2006, which was two years prior to his alleged onset date. (Tr. at 17-18.) Dr. Robertson diagnosed him with an adjustment disorder with mixed anxiety and depressed mood. (Tr. at 18.) He was prescribed Lexapro for depression and Ambien to help him sleep. (Id.) Claimant did not return to Dr. Robertson however, until April 2008, which was after the expiration of his date last insured. (Id.) The record contained no further evidence of any mental health treatment prior to the expiration of his date last insured. The reviewing state agency consultants found that Claimant's mental impairments either were non-severe or there was insufficient evidence of an impairment prior to his date last insured. (Tr. at

19.) The only evidence of any mental health treatment therefore, was after the expiration of Claimant's date last insured. Even then, the ALJ noted that Claimant's treatment with Dr. Robertson after the expiration of his date last insured, remained stable on medication. (Id.) The record does not support any limitation for daily naps for three to four hours a day. The ALJ therefore, assessed a RFC which more than compensated any mental limitation Claimant may have had prior to March 31, 2008, and limited him to performing simple, routine, repetitive, and unskilled tasks that involved only occasional interactions with the general public. Any greater limitations are not supported by the record during the relevant time period, and consequently, the ALJ was not required to adopt the VE's response to the final two hypothetical questions as the limitations contained therein were not supported by the record. Accordingly, the undersigned finds that the ALJ's decision at step five of the sequential analysis is supported by substantial evidence of record and that Claimant's argument is without merit.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: December 16, 2013.

*[signature]*

R. Clarke VanDervort
United States Magistrate Judge